**LAW OFFICE OF LAWRENCE SHEA**
Lawrence W. Shea, II (Bar No. 126976)
lshea@lawrenceshea.com
P.O. Box 6353
San Diego, California 92166
Telephone: (858) 263-1726

**CALLAHAN & BLAINE, APLC**
Edward Susolik (Bar No. 151081)
es@callahan-law.com
John D. Van Ackeren (Bar No. 240739)
jvanackeren@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Phone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Plaintiff DORIAN HARGROVE

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIAN HARGROVE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, a Municipal Corporation; MARA ELLIOTT in her individual capacity and in her official capacity as City Attorney for the City of San Diego; JOHN HEMMERLING in his individual capacity and as Assistant City Attorney for the City of San Diego; and DOES 1 through 100, inclusive ,<br><br>Defendants. | CASE NO.   3:21-cv-01491-CAB-WVG<br>Judge:   Judge Cathy Ann Bencivengo<br><br>**PLAINTIFF DORIAN HARGROVE'S OPPOSITION TO DEFENDANT CITY OF SAN DIEGO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [FRCP 12(B)(6)] AND SPECIAL MOTION TO STRIKE ALL CAUSES OF ACTION [ANTI-SLAPP / C.C.P. 425.16]**<br><br>Hearing Date:   November 22, 2021<br>Hearing Time:   10:30 a.m.<br>Courtroom:   1510<br><br>Complaint Filed:   August 23, 2021<br>Trial Date:   None Set |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .............................................................. 1

II.   HARGROVE HAS STATED A LEGALLY COGNIZABLE CLAIM UNDER 42 U.S.C. § 1983. ....................................................... 4

III.  THE SPECIAL MOTION TO STRIKE THE DEFAMATION CAUSE OF ACTION SHOULD BE DENIED. ........................................ 17

IV.   THE MOTION SHOULD BE DENIED AS TO THE CAUSES OF ACTION FOR INTENTIONAL INFLICTION AND INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE. .............................................................. 23

V.    CONCLUSION ............................................................. 26

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Berry v. Leslie*,
  767 F.3d 1144 (11th Cir. 2014) ......................................................................... 12

*Butz v. Economou*,
  438 U.S. 478 (1978) ............................................................................... 16, 20

*Campanelli v. Regents of University of California*,
  44 Cal. App 4th 575 (1996) ........................................................................ 21

*City of Montebello v. Vasquez*,
  1 Cal. 5th 409 (2016) ........................................................................... 18, 19

*Copp v. Paxton*,
  45 Cal. App. 4th 829 (1996) ...................................................................... 22

*Cunningham v. Simpson*,
  1 Cal. 3d 301 (1969) .................................................................................. 21

*Datil v. City of Los Angeles*,
  263 Cal. App. 2d 655 (1968) ..................................................................... 25

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ................................................................................... 22

*Gomez v. Toledo*,
  446 U.S. 635 (1980) ..................................................................................... 8

*Grenier v. Taylor*,
  234 Cal. App. 4th 471 .................................................................................. 22

*Hafer v. Melo*,
  502 U.S. 21 (1991) .................................................................................. 9, 10

*Hampton v. City of Chicago*,
  339 F. Supp. 695 (N.D. ILL. 1972) ....................................................... 15, 16

*Hampton v. Hanrahan*,
  600 F.2d 600 (7th Cir 1979) ............................................................. 14, 15, 20

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*Imbler v. Pachtman*,
424 U.S. 409 (1976) ................................................................. 13, 16, 20

*Kentucky v. Graham*,
473 U.S. 159 (1985) ........................................................................ 9, 10

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982) .............................................................................. 9

*New York Times v. Sullivan*,
376 U.S. 254 (1964) ............................................................................ 22

*New York Times v. United States*
403 U.S. 713 (1971) .............................................................................. 6

*Philadelphia Newspapers, Inc. v. Hepps*,
475 U.S. 767 (1986) ............................................................................ 23

*Procunier v. Navarette*,
434 U.S. 555 (1978) ..................................................................... 16, 20

*Searcy v. Hemet Unified School District*,
177 Cal. App. 3d 792 (1986) .......................................................... 25, 26

*Smith v. Maldonado*,
72 Cal. App. 4th 640 (1999) ........................................................... 21, 22

*Williams v. Wisconsin*,
336 F.3d 576 (7th Cir. 2003) ............................................................. 12

*Yaselli v. Goff*,
12 F.2d 396 (2nd Cir. 1926) ............................................................... 13

*Ex Parte Young*,
209 U.S. 123 (1908) ............................................................................ 12

**Statutes**

42 U.S.C. § 1983.......................................................................*passim*

Cal. Civ. Code § 45...............................................................................21

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- iii -

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Pages**

Cal. Civ. Code § 46.................................................................................21

Cal. Civ. Code § 47.................................................................................19

Cal. Gov. Code § 815.2 ..................................................................20, 24, 26

Cal. Gov. Code § 820.2 ...........................................................................19

Cal. Code Civ. Proc. § 426 ................................................................18, 20

Cal. Code Civ. Proc. § 426.6 ............................................................17, 18

Fed. R. App. Proc. § 8 ............................................................................23

Fed. R. App. Proc. § 43 ............................................................................9

Fed. R. Civ. Proc. § 25.............................................................................9

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION TO DISMISS

1   **I.      INTRODUCTION**

2          Plaintiff Dorian Hargrove ("Hargrove") is an investigative news reporter

3   employed by NBC7 San Diego who had written extensively concerning public

4   corruption and cover-up by Defendant City of San Diego ("City") officials,

5   including Defendant Mara Elliott ("Elliott"), regarding the purchase and remodeling

6   of the former Sempra building located at 101 Ash Street, San Diego ("101 Ash").

7   Until silenced, his stories revealed the depths of the corruption that have now

8   gripped the city:  *Whistleblower Claims City Ignored Warnings About Asbestos and*

9   *Fire Safety at Downtown High Rise – NBC7 San Diego (February 20, 2020); New*

10  *Cracks Emerge On City Purchase of Former Sempra Building at 101 Ash Street –*

11  *NBC7 San Diego (April 16, 2020); City Officials Knew 101 Ash St. Was Riddled*

12  *With Asbestos – So Why Were Hazards Ignored? – NBC7 San Diego (July 23,*

13  *2020); City Failed To Conduct Basic Review of 101 Ash St. Property: Outside*

14  *Review – NBC7 San Diego (July 29, 2020); City Official at Forefront of 101 Ash*

15  *Purchase Resigns – NBC7 San Diego (August 5, 2020); No Good Options: Did*

16  *Taxpayers Get Burned In 101 Ash Street Deal? – NBC7 San Diego (August 7,*

17  *2020); Fraud or Incompetence? Taxpayers Sue Over Botched $300 Million High*

18  *Rise Deal – NBC7 San Diego (August 18, 2020); City Workers Moved Into 101 Ash*

19  *Despite Concerns of Polluted Water, Failing Sewer Pipes, and Inoperable Fire*

20  *Alarm – NBC7 San Diego (August 21, 2020).*

21         The leasing and cover-up have proven personally and politically embarrassing

22  to Elliott and the City because of her critical role as City Attorney and signatory on

23  the lease.  At the time of the events giving rise to this Complaint, Elliott was in the

24  midst of a re-election campaign for a second term to begin in 2021.

25         The revelation of the fraud and corruption inherent in the 101 Ash transaction

26  and the cover-up during construction was the product of diligent investigations by

27  courageous journalists, including Hargrove, who were willing to ask tough questions

28  and demand answers from politicians on a subject that was embarrassing to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION DISMISS

politicians, including Elliott and Todd Gloria, who was in the midst of his own hotly contested campaign for Mayor.

As these campaigns reached their pinnacle, the City was to reveal the findings of its independent investigation, which were that 101 Ash was not capable of safe occupancy without $115 million in additional repairs.  As it became apparent to insiders at the City that these reports would be scandalous and personally embarrassing, especially to Elliott, who was the only elected signatory to the lease still seeking re-election, the City and Elliott went into cover-up mode.

A whistleblower then came forward with information that Elliott was engaged in a conspiracy to cover-up the true facts – that a decision to flip the transaction from a straight purchase to a lease created a slush fund the sellers and the City's broker divided amongst themselves as windfall profits.  As noted by the Defendants, this revelation eventually resulted in criminal raids on the offices and personal residence of Jason Hughes of Hughes Moreno, the City's broker in the deal, and Cisterra, the lessor.

As the investigation reports were being edited by Elliott prior to disclosure, a whistleblower had leaked the unedited reports to Hargrove who embarrassed Elliott by publishing a story that she was engaged in a cover-up of the reports at the same time as she was releasing her edited version of the report.  In response, she attacked Hargrove with a spurious letter threatening him with criminal prosecution.  Local journalists erupted in disgust and Elliott was forced to apologize publicly for the threat and explain herself to the San Diego Union-Tribune Editorial Board which was trying to decide whether to endorse her in her race to be re-elected as City Attorney.

The whistleblower continued providing information to Hargrove after this incident, and he published articles detailing how the slush fund was created by the flip from a purchase to lease, which ironically was allegedly necessitated because the building failed to appraise for the purchase amount, which was $20 million less

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION DISMISS

1   than the hidden amount paid via the lease.

2       A dispute arose between Elliott and Hargrove concerning the version of one

3   of the investigative reports in his possession that contained a footnote detailing the

4   conversion from a purchase to a lease and stating that the investigators wanted to

5   speak to Todd Gloria, who was City Council President at the time the transaction

6   was approved, to hear his version of why he changed his vote from only being in

7   favor of a purchase into a vote favoring a lease.

8       The author of the footnote in question is in dispute.  Hargrove contends the

9   only persons with access to the Word file necessary to physically insert it and other

10   footnotes into version 2 are within the City, that their identities are known to

11   Defendants and have been concealed largely because of the threat of this lawsuit,

12   that the contents of the footnote are true, and contained detailed facts that were

13   known only to insiders in the City at the time of its publication.

14       Elliott has a history of abuse of power in connection with her dealings with

15   reporters and media organizations, and she uses the power of her position as chief

16   prosecutor to threaten reporters and their employers who publish stories that are

17   unflattering.  In the case of Hargrove, she both as City Attorney and in her

18   individual capacity as candidate under color or her concurrent authority as City

19   Attorney, demanded that NBC7 exercise prior restraint against Hargrove in the form

20   of suspending him without pay during the remainder of the election campaign cycle,

21   prohibiting him from publishing any future stories concerning the City and

22   particularly 101 Ash, prohibit him from submitting any Public Records Requests to

23   the City on any subject, and publicly disclose his suspension to intimidate

24   journalists in other news organizations covering 101 Ash and to intimidate

25   whistleblowers within the City who Elliott suspected were working with reporters

26   concerning the many investigative news stories being published which were

27   personally and politically embarrassing to her.

28       As a result of these threats, Hargrove, who at the time had become one of the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 3 -

premier emerging young watchdog reporters, has been personally and professionally damaged, has suffered lost earnings and lost earning potential, and permanent damage to his professional reputation, and had to take an extended leave of absence due to medical disability, all of which is alleged in the Complaint.

Hargrove comes now to present his claims against Defendants, which are detailed extensively in his Complaint and respectfully submits this Opposition to Defendants' Motion to Dismiss and Special Motion to Strike.

## II.   <u>HARGROVE HAS STATED A LEGALLY COGNIZABLE CLAIM UNDER 42 U.S.C. § 1983.</u>

Plaintiff has made the following substantive allegations relative to his claims under 42 U.S.C. §1983:

- The City is a local municipality and as such is subject to potential liability under the statute (Complaint ¶¶ 16, 17, 18).

- Elliott and Defendant John Hemmerling ("Hemmerling") (Elliott, Hemmerling, and the City are collectively referred to herein as "Defendants") were employees of the City acting under color of legal authority of a municipal entity, and as such the United States Constitution, First Amendment governs their individual and collective action (Complaint ¶ 19).

- The City's formal and informal policies allowed, encouraged, authorized, permitted, and/or ratified the actions of Elliott and Hemmerling to violate Hargrove's Constitutional rights of free speech.  (Complaint ¶ 20.)  "There is no dispute that Mara Elliott and John Hemmerling were exercising policy-making functions within the course and scope of their official duties …."  (Points and Authorities in Support of Defendants' Motion to Dismiss and To Strike, pg. 17, lines 14-19, citing Complaint paragraph 71: "MARA ELLIOTT and JOHN HEMMERLING acted as final policymaking authority for the CITY OF SAN DIEGO concerning the actions alleged to have caused the particular constitutional violation alleged herein.")

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- Hargrove was an investigative reporter working for NBC7 San Diego who had written numerous stories revealing public corruption and cover up associated with the purchase and remodeling of 101 Ash Street. (Complaint ¶ 25;  Points and Authorities in Support of Defendants' Motion to Dismiss and To Strike pg. 14, line 26.)

- In the course of his duties as investigative new reporter, Hargrove was contacted by a source who provided documents ostensibly sourced from within the City of San Diego, which revealed new aspects of the public corruption story he had been covering, and thereafter on July 29, 2020, contacted the City to advise that he had received these reports, that they "raised legitimate questions regarding the veracity of the [previously disclosed investigation] report and whether it [the previously disclosed report] was being edited before publication for political purposes by the CITY OF SAN DIEGO and/or MARA ELLIOTT, in order to conceal politically embarrassing information about the official transaction to acquire the building." (Complaint ¶ 34).

- Thereafter, on July 29, 2020, Hargrove published a story entitled, *City Failed to Conduct Basic Review of 101 Ash St. Property*:  *Outside Review*, in which it was revealed to the public that NBC7 had received reports from a confidential source showing the City had failed to conduct reasonable due diligence before entering in the transaction, that the City was aware of serious life safety deficiencies in the building including the lack of a fire system, and that there was evidence the City may have facilitated the sellers to make extraordinary profits from the sale, all of which Elliott had concealed from the public by editing the investigation report before disseminating it.  (Complaint ¶ 38.)

- Thereafter on July 30, 2020, Hemmerling sent a letter to Hargrove on behalf of Elliott and the City stating Hargrove was in unlawful possession of documents shared with City Council in closed session.  (Complaint ¶ 42.)  This legal assertion was in fact false:  Defendants knew they had no basis to assert that Hargrove was in

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION DISMISS

unlawful possession of these documents.  See *New York Times v. United States* 403 U.S. 713 (1971).  The letter further alleged that Hargrove was prevented from publishing the confidential documents by reason of "The Brown Act, the City's Ethics Ordinance, California Government Code and California Penal Code," which were also false statements as no statute was applicable to preclude Hargrove's publication of these documents.  (Complaint ¶ 42.)  See *id*.  The letter also falsely states, "I [MARA ELLIOTT] have opened a criminal investigation into these matters…" which Elliott later recanted in her retraction, "The letter my office [City Attorney's Office] sent earlier to an NBC reporter never should have been sent my Office has never - and will never - prosecute a journalist or compel them to reveal confidential sources.  This was a standard form letter the Criminal Division of my Office often sends and is appropriate for many potential witnesses, but not the press. I've retracted the letter and I've personally called the reporter to assure him he is not under investigation in this matter, nor will he ever be."  (Complaint ¶ 44.)

• Hargrove has alleged this letter was sent for the purpose of threatening and intimidating him and NBC from further investigative reporting of public corruption and cover-ups associated with 101 Ash, and it was universally received as a threat by local journalists, necessitating Elliott to repeatedly apologize for her abuse of power.  (Complaint ¶ 45, citing San Diego Union Tribune Editorial Board opinion stating, "Let's be clear:  it was outrageous for San Diego City Attorney Mara Elliott to threaten NBC7 journalist Dorian Hargrove last Friday saying a criminal investigation was pending over his possession of confidential city documents related to the Ash Street office building fiasco.  The threat was quickly withdrawn after he posted the letter on Twitter.  But he never should have been threatened for doing his job and doing it well."  (Complaint ¶ 45.)

• Hargrove further alleges that Defendants' threats were consistent with other bad faith and baseless actions taken against another reporter and media outlet covering 101 Ash St during the same time period and were part of a "general policy

- 6 -

OPPOSITION TO MOTION DISMISS

of DEFENDANTS in the Summer of 2020 to intimidate journalists who were reporting adverse and embarrassing stories revealing the 101 Ash Street scandal … and to prevent the exercise of their right to freedom of speech guaranteed under the U. S. and California State Constitutions."  (Complaint ¶ 46.)

• Thereafter, Hargrove on behalf of NBC published a news story entitled, *101 Ash St. Investigation Looked At Whether City Staff, Former Council Member Gloria Misled Public*.  (Complaint ¶47.)  This story revealed additional information that had not before been revealed to the public that the Real Estate Assets Department of the City had misled the City Council about the reasons why the building was leased instead of being purchased outright which deal structure is how the sellers inflated the transaction value from $67-72 million to $92 million to the concealed enrichment of the sellers.  (Complaint ¶ 48.)  The undisclosed slush fund of additional proceeds is the source of money that made its way to Jason Hughes which eventually led to the investigation and raid of his offices.   The article discusses a footnote 15 within the "version 2" of the confidential report which is quoted in the Complaint at paragraph 56.  A dispute arose as to the authenticity of footnote 15, and Defendants' statement as to the inaccuracy of footnote 15 was included in the article.

• Hargrove alleges on information and belief that footnote 15 was added by a person inside the City with detailed knowledge of previously undisclosed material facts regarding a complex real estate transaction.  (Complaint ¶ 56.)  Hargrove further alleges that Elliott and the City were aware of the likelihood that documents in Hargrove's possession were accurate copies of the original investigation reports, that Hargrove was accurate that these reports had been edited by Defendants to conceal embarrassing information, and that the footnotes were created by an undisclosed person in the City who wished to ensure that the true facts were disclosed and that persons involved in the original transaction were accountable. (Complaint ¶ 57.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- Hargrove further alleges that Defendants, using the same cloak of authority asserted in the July 30th letter (which had to be withdrawn to their embarrassment), then made new demands that NBC7 prevent Hargtove from ever again reporting on 101 Ash St or with regard to any City matters.  (Complaint ¶ 59.)

- Hargrove further alleges that NBC capitulated to Defendants' threats and took adverse employment action against Hargrove, which included barring him from further reporting regarding the City, thereby censoring Hargrove from writing any more stories concerning public corruption and fraud associated with 101 Ash.  "By their actions, DEFENDANTS had accomplished their censorship goal; the journalist who had written the vast majority of stories exposing public corruption, fraud and subsequent cover-up that has captivated the city, was suddenly and permanently silenced."  (Complaint ¶ 61.)

- Hargrove further alleges that Defendants demanded that NBC& announce this adverse employment action publicly to retaliate against him for the exercise of his Constitutionally protected speech, to make an example of Hargrove to the journalism community regarding the potential personal consequences the City may compel thereby chilling the exercise of First Amendment rights.  The Complaint further alleges the purpose of demanding public disclosure was to intimidate informants from exercising their First Amendment rights by coming forward with other damaging information.  (Complaint ¶ 62.)

- Finally, Hargrove alleges that as a proximate result of the actions by Defendants, he has suffered and will continue to suffer damage to his reputation and employability as a news investigative reporter and has suffered past and future loss of earnings as well as general damages in the form of emotional distress and associated bodily injury including past and future medical expenses.

The elements of a cause of action under 42 U.S.C. section 1983 are: (1) deprivation of a Federal right; and (2) that the person who deprived Plaintiff of that right acted under color of state authority.  See *Gomez v. Toledo*, 446 U.S. 635, 640

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION DISMISS

(1980).  Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law.  See *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982).

Officials may be sued in both their official capacity and personal capacity. An official may be held liable personally for damages under Section 1983 based on actions taken in his or her official capacity as long as the official is sued in his or her individual capacity.  See *Hafer v. Melo*, 502 U.S. 21 (1991).

In *Kentucky v. Graham*, 473 U.S. 159 (1985), the Supreme Court sought to eliminate lingering confusion about the distinction between personal- and official-capacity suits.  The Court emphasized that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 165 (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  A suit against a state official in her official capacity therefore should be treated as a suit against the State.  *Id.* at 166.  Indeed, when an official sued in this capacity in federal court dies or leaves office, her successor automatically assumes her role in the litigation.  See Fed. R. Civ. Proc. 25(d)(1); Fed. R. App. Proc. 43(c)(1); this Court's Rule 35.3.  Because the real party in interest in an official-capacity suit is the governmental entity, and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, *supra*, 473 U.S. at 166 (quoting *Monell*, *supra*, 436 U.S. at 694).  For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses.  *Id.* at 167; *Hafer*, *supra*, 502 U.S. at 25.

"Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law.  Thus, '[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  right." *Id.* at 166.  While the plaintiff in a personal-capacity suit need not establish a

2  connection to governmental "policy or custom," officials sued in their personal

3  capacities, unlike those sued in their official capacities, may assert personal

4  immunity defenses such as objectively reasonable reliance on existing law.  *Id.* at

5  166-67;  *Hafer*, *supra*, 502 U. S. at 25.

6      Here, Hemmerling is sued in his official capacity only.  Personal liability is

7  not sought against this Defendant, thus personal immunity issues raised in

8  Defendants' Motion t are moot.  (See Defendants' Motion at pg. 23, line 17.)

9      Elliott is sued both in her individual and her state capacity.  She acted not

10  only in her official capacity but also in her personal capacity as candidate for re-

11  election as City Attorney, under color of her authority as existing City Attorney.  As

12  alleged, Elliott's Twitter campaign against Hargrove was conducted on two fronts

13  simultaneously, each making similar false allegations.  On the official Twitter

14  account, Elliott stated: "Our Democracy is under attack from many directions, and

15  reckless lies like this are designed to undermine public trust, San Diegans deserve to

16  know the truth about who was behind this smear campaign, and how they got away

17  with it for so long."  (Complaint ¶ 63.)  On Elliott's personal Twitter account, she

18  published the following statement: "NBC7 suspended Dorian Hargrove after its

19  internal investigation found he wrote a phony story based on a fabricated document.

20  The only defamation was the false story itself, a wild and baseless smear

21  orchestrated to swing an election.  San Diegans still need to know who helped

22  Hargrove write his story, and who sought to benefit politically or otherwise from the

23  lies is spread about the City Attorney and Todd Gloria."  (Complaint ¶ 65.)

24      These Tweets were false and were part of the pressure campaign applied to

25  NBC7 by Elliott to have Hargrove silenced.  The true facts were that the NBC7

26  internal investigation did not determine the story at issue was "phony."  In fact, with

27  a small retraction of the footnote 15 reference, the story remains published.  As

28  alleged in the Complaint, there was no finding that the footnote at issue was

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION DISMISS

fabricated.  The editing and document management protocols of the City Attorney in regard to the 101 Ash investigation leave much doubt as to the origin of footnote 15.  The substantive content of footnote 15 was in fact accurate.  There remains doubt as whether the footnote was inserted by the City Attorney's office or someone else at the City with permission to access the Word file, with permission to make suggested edits, or even whether there was a debate within the City as to whether the report was complete without the insertion of the footnote.  The statement also falsely alleges that the story was part of an "orchestrated" "plot" designed to "effect the outcome of the election."  The true facts are that the story was one of many investigative news stories published by NBC7, which at the time were the most probing and detailed disclosures of the emerging public corruption scandal that now envelops the City.  Moreover, the statement that Hargrove was part of a plot to interfere in the election is without basis and is designed to further the threats first asserted in the Hemmerling letter and to support the demands being made upon NBC7 for punitive action to be taken against Hargrove to include a restraint on his ability to publish news stories on 101 Ash and to prohibit him from issuing Public Records Requests to the City.  (Complaint ¶¶ 63-66.)

The Complaint further alleges on information and belief that additional oral statements were made by Elliott in her official and individual capacities during concealed telephone or other conferences with NBC7 for the purpose of convincing it to take adverse employment action against Hargrove, to prevent him from publishing news stories concerning 101 Ash or on any subject related to the City, that it issue a public statement announcing retaliatory and punitive action taken to silence Hargrove to intimidate other reporters covering the story and to threaten potential whistleblowers within the City from continuing to work with these reporters, to and to permanently damage the reputation of Hargrove so as to prevent other employers in media from allowing him to publish such stories in the future. (Complaint ¶ 67.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION DISMISS

The Complaint alleges that this course of conduct beginning with the false "criminal investigation" Hemmerling letter, then the intimidation of reporters at other media outlets, the Twitter campaign on the City Attorney's official account and her personal account during her campaign, the personal meetings and telephone conferences with NBC7 to demand retaliation and permanent restraint of speech, and then the Tweet by Elliott celebrating the adverse employment action she compelled are all part of a systematic abuse of power preventing Hargrove from the exercise of his right to freedom of speech.  (Complaint ¶¶ 68-70.)

In order to prevail on a personal liability claim under Section 1983, the plaintiff must generally show that the official was personally involved in the acts that resulted in the constitutional deprivation, and the inquiry into causation must focus on the duties and responsibilities of each of the individual officials whose acts or omissions are alleged to have resulted in a constitutional deprivation.  See *Berry v. Leslie*, 767 F.3d 1144 (11th Cir. 2014).

Section 1983 permits—and the Eleventh Amendment does not bar—official-capacity suits that seek prospective injunctive relief against state officials.  See *Ex Parte Young*, 209 U.S. 123 (1908); see also *Williams v. Wisconsin*, 336 F.3d 576, 581 (7th Cir. 2003).  To come within the *Young* doctrine, the plaintiff must establish ongoing violations of federal law and seek prospective relief.  The plaintiff must name as defendant the state official who is responsible for enforcing the contested statute in her official capacity; a claim for prospective relief against the state itself, or a state agency, will be barred by the Eleventh Amendment.  All of these requirements are met by the allegations in the Complaint, which names Elliott and Hemmerling for the purpose of seeking an injunction under the *Young* doctrine precluding them from threatening reporters or media companies covering public corruption involving 101 Ash for the purpose of restraining the free exercise of speech under the First Amendment of the U.S. Constitution.

The Complaint also alleges that the City is liable under *Monell v. Dept. of*

*Social Services*, *supra*, because Elliott and Hemmerling acted as final policymaking authority for the City concerning the actions alleged to have taken place to place a prior restraint on Hargrove from the exercise of his First Amendment rights and to retaliate against him for the exercise of that right, and for the purpose of preventing the free exercise of speech by other media outlets and reporters covering the same story.  (Complaint ¶ 71.)  It does not seek to hold the City vicariously liable, but liable directly for its own policy, which is being implemented by its City Attorney's Office, by and through the policy-making authority of Elliott in her official capacity.

Contrary to Defendants' assertion, prosecutorial immunity does not apply under the facts alleged.  Absolute prosecutor immunity derives from the common law rule of quasi-judicial immunity.  *Yaselli v. Goff*, 12 F.2d 396 (2nd Cir. 1926), affirmed 275 U.S. 503 (1927).  The United States Supreme Court addressed the Section 1983 immunity of a prosecutor in *Imbler v. Pachtman*, 424 U.S. 409 (1976).  There, the Supreme Court held a prosecutor who acted within the scope of his duties in initiating and pursuing a criminal prosecution was absolutely immune from suit under Section 1983 for alleged deprivations of constitutional rights where it is alleged the prosecutor knowingly used perjured testimony and suppressed material evidence.  The Court recognized that there is an important distinction between a prosecutor's role in filing and prosecuting a case in court and the administrative or investigative duties that are also part of the role:

> We recognize that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom [. . .]. Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence. At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. Drawing a proper line between these functions may present difficult questions, but this case does not require us to anticipate them.

*Id.* at 430.

Limitations of the applicability of absolute prosecutorial immunity were

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION DISMISS

addressed in a late 1960s case arising in Chicago during the racial tensions of the era and the establishment of the Black Panthers.  The controversy arose from the execution in 1969 of a judicial search warrant within an apartment in Chicago occupied by nine members of the Black Panther Party.  In the course of the search, two of the apartment's occupants were killed by gunfire and four others were wounded.  The police seized various weapons and arrested the seven surviving occupants of the apartment.  The survivors were indicted by a state grand jury on charges of attempted murder and aggravated battery, but the indictments ultimately were dismissed.  Those seven persons and the legal representatives of the two persons killed then filed a Section 1983 action against Cook Country, the City of Chicago, and various state and local officials, including the prosecutor.  See *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir 1979).  Defendant Edward Hanrahan had been elected prosecutor of the City of Chicago in 1968 the same month the Black Panthers opened a chapter in the city.  *Id.* at 608-10.  In 1969, Hanrahan received a tip from an FBI counter-intelligence program designed to "neutralize" the Black Panther party.  *Id.* at 608.  During the summer of 1969, tensions between the Black Panthers and Chicago law enforcement agencies escalated.  *Id.* at 610.  On December 4, 1969, the day of the raid, Hanrahan issued a statement to the press in which he adopted the law enforcement officers' version of the shooting, though he was aware of conflicting stories.  *Id.* at 616.  Four days later, Hanrahan held another press conference reiterating the officers' account.  At his request, CBS News published an exclusive interview with the raiders on December 11th showing photographs provided by his office of bullet holes to buttress the officers' account.  On December 12th, a re-enactment of the raid was presented by CBS that was edited by the prosecutor's office.  The re-enactment set was constructed at the prosecutor's offices and the officers involved were present during filming.  On December 13th, Hanrahan held another press conference in which he again asserted the accuracy of the officers' version of the raid.  *Id.* at 616-17.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 14 -

A Grand Jury handed down indictments of the surviving Black Panthers for attempted murder and aggravated battery. Hanrahan was responsible as prosecutor for presentation of evidence to the Grand Jury. *Id.* at 618.

In March, Hanrahan learned that an independent ballistics expert had conducted tests discovering that the shells previously claimed by Chicago police to have been fired from inside the apartment were actually fired by the raiding police officers. These tests were thereafter confirmed by Chicago ballistics experts who fired the raiding police officers' weapons for the first time in the investigation. On May 4, 1970, Hanrahan informed a Federal Grand Jury convened to investigate the raiding police officers for violations of the Black Panthers' civil rights that the previous criminal indictment against the survivors would be dropped. *Id.* at 618-20.

The survivors sued for civil rights violations under Section 1983 and the trial court dismissed on the grounds of prosecutorial immunity. *Hampton v. City of Chicago*, 339 F. Supp. 695 (N.D. ILL. 1972), *rev'd* 484 F.2d 602 (7th Cir. 1973), *cert. denied* 415 U.S. 917 (1974). The U.S. Court of Appeals reversed, holding that the allegations respecting the planning and execution of the raid were sufficient to state a claim under Sections 1983 and 1985(3). The Court further held that the alleged participation of the prosecutor in the planning and execution of the raid was not quasi-judicial conduct and therefore was only entitle to the qualified immunity granted to police officers. *Id.* at 608-09.

The case then proceeded to trial and again appeared before the Court of Appeal on an appeal from a directed verdict in favor of the defendants. The Seventh Circuit found the plaintiffs had presented sufficient evidence to support their claims under Section 1983, and in so doing addressed the absolute immunity defense of prosecutors. The Court held that where a prosecutor is involved in the presentation of a case in court she is entitled to absolute immunity, but where she is engaged in investigative functions she is only entitled to qualified immunity. *Id.* at 631. The prosecutor's post-raid publicity activity, which may have encouraged both pre-trial

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

prejudice and the alleged cover-up, was held not protected by absolute immunity. *Id*. at 632.  The Court concluded that nothing in *Butz v. Economou*, 438 U.S. 478 (1978), or *Imbler*, *supra*, suggested a prosecutor's publicity activity should receive absolute immunity.  *Id.* at 633.  The Court reasoned that allowing only qualified immunity for publicity campaigns of a prosecutor would not have any adverse effect on the functioning of the criminal justice system as a whole.  *Id.* at 633.

After addressing the inapplicability of absolute immunity of the prosecutors for non-judicial activities, including press releases, the Court then addressed the immunity defenses of the Federal officers sued by the survivors who claimed qualified immunity alleging they were law enforcement officers investigating a potential crime.  The Court found that the correct test for the applicability of qualified immunity was prescribed in *Procunier v. Navarette*, 434 U.S. 555, 562 (1978).  If the Constitutional right that the defendants allegedly violated was clearly established at the time of the conduct, and if the defendants knew or should have known of the right, or knew or should have known that their conduct violated the constitutional norm, the doctrine of qualified immunity would not apply.  *Id.* at 634-35. According to the Appellate Court, the United States Supreme Court held in *Procunier* that qualified immunity is not available where the defendant official has acted with malicious intent to deprive the plaintiff of a constitutional right or cause him other injury.  A determination of whether a defendant's actions are entitled to qualified immunity under this test therefore requires a trial on the merits and would have to be addressed after a re-trial.  *Id.* at 649.

Here, Hargrove contends that qualified immunity does not apply because there is no plausible basis for reasonableness on the part of Defendants with regard to the actions taken to interfere with Hargrove's civil rights, but even if there is some theory on which reasonableness could apply, the Complaint at issue here alleges that the actions of Elliott were "knowingly undertaken … with actual malice and/or with conscious disregard for the harm that would be caused …"  (Complaint

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   ¶ 74.)  A finding by the trier of fact that Elliott acted with actual malice would

2   eliminate any finding of reasonableness and thus the applicability of a qualified

3   immunity defense.  Further, the claims asserted herein are predicated on the First

4   Amendment of which all Defendants were aware and as to which there can be no

5   reasonable dispute of their applicability to the speech of a reporter in the context of

6   the 101 Ash investigation. The principles of qualified immunity, under these

7   allegations are inapplicable, and in any event cannot be determined at the pleading

8   stage because ultimate determination cannot be made until there is a resolution on

9   the merits of Defendants' state of mind.

10         Thus, for the foregoing reasons, Hargrove respectfully submits that the

11   Motion to Dismiss on the basis of immunity be denied in its entirety.

## III.   THE SPECIAL MOTION TO STRIKE THE DEFAMATION CAUSE OF ACTION SHOULD BE DENIED.

As stated in California Code of Civil Procedure section 426.6:

> The Legislature finds and declares that there has been a disturbing increase in lawsuits brought to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.  To this end, this section shall be construed broadly.

This Code section does not terminate the tort of defamation.  Where, as here, a plaintiff meets his burden of showing a prima facie case of defamation, there is no "abuse of the judicial process" and the Code section does not apply.

Under Code of Civil Procedure section 426.6(b)(1):

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Code of Civil Procedure section 426.6(e) provides:

> As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Hargrove contends that the speech alleged that involves meetings, phone calls or other direct communications between Defendants and NBC7 impugning his reputation for the purpose of seeking to restrain him from reporting on matters involving the City, public corruption concerning the purchase and cover up of 101 Ash, and to prevent him from using the California Public Records Act with regard to the City on any topic does not qualify under Section 426.6(e) because it is not made in a public forum, subsection (e)(3), and not pursuant to subsection (e)(4): (i) Constitutionally protected speech, (ii) made in connection with a public issue or issue of public interest.  Speech that is intended to deprive Hargrove of his Constitutionally protected civil rights guaranteed under the U.S. Constitution cannot as a matter of law be protected under the California Code of Civil Procedure. Moreover, the actions in question do not involve a matter of public interest as there is no valid public interest in whether Hargrove may continue working as a reporter, report on matters involving the City, or be allowed to submit Public Records Requests.

The California Supreme Court has also repeatedly confirmed that Section 426 cannot be used in the context of illegal activity.  In *City of Montebello v. Vasquez*, 1 Cal. 5th 409 (2016), the Court stated:

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION DISMISS

> In *Flatley v. Mauro* (2006) 39 Cal.4th 299, 46 Cal.Rptr.3d 606, 139 P.3d 2 (*Flatley*), we held that 'section 425.16 cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition." (*Flatley*, at p. 317, 46 Cal.Rptr.3d 606, 139 P.3d 2.)  We emphasized that section 425.16 was expressly intended to protect valid speech and petitioning activity.

*Id.* at 423.

For the same reason, California Civil Code section 47(a) and (b) do not apply under these circumstances.  Statements made for the purpose of depriving Hargrove of his civil rights guaranteed under the U.S. Constitution cannot legally constitute "proper discharge of an official duty" or be made "in an official proceeding" "authorized by law."  Moreover, the Tweet sent by Elliott from her personal account as a press release by her campaign manager while she is candidate for City Attorney does not constitute policy making or fall within her official duties as contemplated by this statute.

The secondary argument made by Defendants that the allegedly defamatory actions undertaken were subject to governmental immunity under California Government Code section 820.2 because they were the result of discretionary authority vested in the employee is also inapplicable to a case where those actions are alleged to have violated Hargrove's civil rights guaranteed under the U.S. Constitution.  As a matter of law, actions undertaken by Defendants for the purpose of depriving Hargrove of his Constitutional Right to freedom of speech cannot be the result of lawful discretion vested in the City employee.

Defendants have distorted the allegations of the Complaint to fit their legal narrative and force fit an inapplicable set of arguments to deprive Hargrove of his meritorious claims.  The Complaint alleges that Defendants pressured NBC7 to take adverse employment action against Hargrove to include a prior restraint of any published story concerning the City, including the public corruption and cover-up of 101 Ash, to restrain him from filing any lawful Public Records Requests, to take

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 19 -

adverse employment action against him and to publicize that action so as to intimidate other reporters and other media companies from reporting on 101 Ash, and to intimidate whistleblowers who had come forward from continuing to work with the press on such stories. It is further alleged that similar actions were undertaken by Elliott with regard to other reporters in other media organizations who were reporting adversely on 101 Ash. And it is alleged that these actions were undertaken with knowledge of their illegality with actual malice in order to deprive Hargrove of his rights which were contemplated by Defendants.

Defendants no doubt wish to convert those allegations into a benign request for a retraction, but that is not the nature of the suit and that spin is not consistent with the record nor the Complaint.

The same alleged conduct that forms the basis for Hargrove's Section 1983 action is restated and incorporated as the factual allegations underlying the defamation cause of action. It is legally untenable for conduct that gives rise to a cognizable claim for deprivation of civil rights guaranteed under the U.S. Constitution to be protected speech under the anti-SLAPP provision in the California Code of Civil Procedure, because conduct that violates the U.S. Constitution is not protected activity under Code of Civil Procedure section 426 as a matter of law.

Moreover, conduct of a prosecutor that the U.S. Supreme Court has determined is not cognizable as either absolute immunity or qualified immunity does not resurrect because that same immunity is codified in the California Civil Code. The discretionary immunity described in California Government Code section 815.2 is the same immunity that was addressed in *Procunier*, *supra*, *Imbler*, *supra*, *Butz*, *supra*, and *Hampton*, *supra*. A City Attorney does not have the discretion to violate the U.S. Constitution by depriving a citizen of their right to freedom of speech.

Hargrove also contends that the defamation cause of action in the Complaint

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION DISMISS

meets the requirements for his case to proceed on the merits.

In California, "[T]he Tort [Defamation] involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 640, 645 (1999); Cal. Civ. Code §§ 45, 46. "Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made. Publication need not be to the 'public' at large; communication to a single individual is sufficient." *Cunningham v. Simpson*, 1 Cal. 3d 301, 306 (1969).

"Where the words or other matters which are the subject of a defamation action are of ambiguous meaning, or innocent on their face and defamatory only in light of the extrinsic circumstances, the plaintiff must plead and prove that as used, the words had a particular meaning, or 'innuendo' which makes them defamatory." *Smith*, *supra*, 72 Cal. App. 4th at 645, 646. "Where the language at issue is ambiguous, the plaintiff must also allege the extrinsic circumstances which show the third person reasonably understood it in its derogatory sense (the inducement)." *Smith*, *supra*, 72 Cal. App. 4th at 646.

"The critical determination of whether an allegedly defamatory statement constitutes fact of opinion is a question of law for the court." *Campanelli v. Regents of University of California*, 44 Cal. App 4th 575, 578 (1996). "If the court concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury." *Id.* at 578.

Truth is a defense regardless of bad faith or malice. *Smith*, *supra*, 72 Cal. App. 4th at 646.

> The defendant must 'justify' or show the truth of the statements. If the statements are not defamatory on their face but are capable of a defamatory meaning imputed by innuendo, the defendant must demonstrate the truth of the statements in that sense in which the plaintiff's innuendo explains them. However, the defendant need not justify the literal truth of every word of the allegedly defamatory

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 21 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1
2
3

> matter.  It is sufficient if the defendant proves true the substance of the charge, irrespective of slight inaccuracy of the details, 'so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark.'

4    *Smith*, *supra* 72 Cal. App. 4th at 646-47, citing *Campanelli*, *supra*, 44 Cal. App. 4th

5    at 581-82.

6        Defendants make the spurious claim that because a reporter writes a series of

7    stories he has become a public figure for purposes of media liability and that

8    because Hargrove wrote stories concerning corruption in connection with 101 Ash

9    he can only sue for defamation if he meets the actual malice test in *New York Times*

10   *v. Sullivan*, 376 U.S. 254 (1964).  This is a misstatement of the law and Defendants

11   are misrepresenting the holdings in the very cases they cite for this proposition.

12       Defendants cites *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) in support

13   of their argument.  In *Gertz*, the Supreme Court refused to apply the New York

14   Times doctrine to a private citizen.  *Id.* at 351-52.

15
16
17
18
19

> Petitioner was also not a public figure.  Absent clear evidence of general fame or notoriety in the community and pervasive involvement in ordering the affairs of society, an individual should not be deemed a public figure for all aspects of his life.  Rather, the public figure question should be determined by reference to the individual's participation in the particular controversy giving rise to the defamation.  Petitioner's role in the Nuccio affair did not make him a public figure.

20   *Id.*

21       Defendants then cite *Grenier v. Taylor*, 234 Cal. App. 4th 471, which is an

22   anti-SLAPP case that does not address the New York Times doctrine.  The next case

23   cited is *Copp v. Paxton*, 45 Cal. App. 4th 829 (1996), which involved a plaintiff who

24   was the person petitioning the government on a particular matter and as such

25   became a public figure with regard to statements made by the controlling

26   government official on the subject of his petition.  He was not a journalist writing

27   stories on government corruption and the facts have no applicability to the issues

28   presented by this case and do not even arguably stand for the proposition that a

- 22 -

OPPOSITION TO MOTION DISMISS

journalist who writes stories on a matter becomes a public figure for purposes of the New York Times doctrine.

Even though it is not required to prove his defamation case, Hargrove alleges in the Complaint that the alleged statements by Elliott were made with actual malice and with knowledge of their falsity and/or conscious disregard for their truth, and Hargrove fully intends to prove it.

Defendants then argue that because the alleged defamatory speech involves a matter of public concern, Hargrove bears the burden of proving falsity and cites *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986). This case involves the New York Times doctrine but in an inapplicable way. The alleged defamation was by a media corporation that wrote stories to the effect that a company had ties to organized crime, which led to a defamation action against the newspaper. There was a presumption that defamatory statements are false which the Court decided did not apply when the publication involved a matter of keen public interest. In such cases, the plaintiff must prove the statement was false. Hargrove alleges that the statements at issue were false and intends to prove that at trial making this case inapplicable.

The remainder of Defendants' argument is a closing statement that does not prove there is no basis for the Complaint to go forward. Hargrove respectfully disagrees with their characterization and contends that the defamation claim meets the notice pleading requirements of Federal Rules of Civil Procedure, Rule 8.

## IV. <u>THE MOTION SHOULD BE DENIED AS TO THE CAUSES OF ACTION FOR INTENTIONAL INFLICTION AND INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.</u>

Under Federal Rule of Civil Procedure, Rule 8, notice pleading is defined as follows:

> (a)   CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

OPPOSITION TO MOTION DISMISS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

(1)    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2)    a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3)    a demand for the relief sought, which may include relief in the alternative or different types of relief.

Detailed fact pleading as required in California state courts is not the applicable standard.  Regardless, the Complaint at issue here is extraordinarily detailed, exceeding standards for fact pleading and adequately addresses all of the elements of the cause of action for intentional interference which are accurately stated in Defendant's Points and Authorities.

Defendants then assert an incorrect statement of the law in support of their argument for immunity.  California law provides that a governmental entity may be sued for the same torts that would apply if it were an individual under the same circumstances, in the absence of an immunity.

Pertinent California Government Code sections provide as follows:

§ 815 Except as otherwise provided by statute:

(a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

(b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person.

§ 815.2

(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

(b) Except as otherwise provided by statute, a public entity

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

> is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

Section 815 carries forward the common law rule of sovereign immunity. However, the first statute to follow states the California rule that a sovereign waives immunity for any tort that could have been stated if the sovereign were an individual, in the absence of an enumerated immunity. Defendants cite *Datil v. City of Los Angeles*, 263 Cal. App. 2d 655, 660 (1968) in support of their incorrect statement of the law, but it is inapplicable. *Datil* is a case involving a prisoner claim which is covered by an immunity statute.

> [Government Code] Section 845.2 provides that (except as provided in other instances) 'neither a public entity nor a public employee is liable for failure to provide a prison, jail or penal or correctional facility or, if such facility is provided, for failure to provide sufficient equipment, personnel or facilities therein.' Section 844 defines 'Prisoner' as follows: 'As used in this chapter, 'prisoner' includes an inmate of a prison, jail or penal or correctional facility.'

*Id.* at 658.

Defendants then cite *Searcy v. Hemet Unified School District*, 177 Cal. App. 3d 792, 798 (1986), which is also inapplicable. *Searcy* dealt with a school district sought to be held liable for injuries to a first-grade child while she was crossing a street off school grounds. The first issue addressed was the claim of dangerous condition of property at the street crossing which the Court found failed to state a cause of action because there was no specific statute mandating the governmental entity modify the intersection in the manner claimed necessary to make it safe. *Id.* at 798. First, the school district defendant did not own the property where the accident occurred so Dangerous Condition liability did not apply. *Id.* at 798. Second, there was no mandatory duty requiring the school district to manage property it did not own and it did not assert control voluntarily thus it had no duty with respect to this intersection and the school safety regulations for protection of children while at school did not apply because the accident happened away from the

school. *Id.* at 798-99.  This is the portion of the opinion cited by the defense here for a different proposition.  The opinion then addressed other bases for a potential duty based on special relationship and there addressed the absence of immunity pursuant to Section 815.2 for the same proposition asserted by Hargrove, but found no duty because of long standing cases that a school district has no duty to protect children as pedestrians while walking to and from the school grounds. *Id.* at 804.

The Complaint here sufficiently states facts giving rise to a duty under the circumstances.  It alleges that the City affirmatively attacked Hargrove, willfully with malice and/or conscious disregard, which is inapplicable to the stretched duty in the cases cited by Defendants.  Section 815.2 provides that the sovereign is not immune for any tort for which it may be sued if it were an individual in the absence of a statutory immunity and there being no immunity on point, the City is thus not immune from prosecution under the facts alleged.

## V.    **CONCLUSION**

For the reasons stated and for good cause appearing, Hargrove respectfully requests this Court deny the Motion to Dismiss and Special Motion to Strike, or in the alternative, the Court grant leave to amend should any claim be found lacking in any particulars.

DATED: November 8, 2021              **LAW OFFICE OF LAWRENCE SHEA**

By:   */s/ Lawrence W. Shea, II*
Lawrence W. Shea, II
Attorney for Plaintiff DORIAN
HARGROVE

DATED: November 8, 2021              **CALLAHAN & BLAINE, APLC**

By:   */s/ John D. Van Ackeren*
Edward Susolik
John D. Van Ackeren
Attorneys for Plaintiff DORIAN
HARGROVE

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM